UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ELLIE HAPPEL**, and <br><br> **JUST FUTURES LAW**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF HOMELAND SECURITY**, <br><br> **UNITED STATES DEPARTMENT OF STATE**, and <br><br> **U.S. CITIZENSHIP AND IMMIGRATION SERVICES**, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Freedom of Information Act, 5 U.S.C. § 552 |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking agency records regarding the evaluation of country conditions for countries designated for Temporary Protected Status ("TPS").

2. TPS is a designation under the Immigration and Nationality Act ("INA") that grants eligible individuals from certain countries the right to stay in the U.S. temporarily. TPS holders can obtain work authorization and are protected from deportation. TPS involves two steps: first, the Secretary of Homeland Security ("Secretary") designates a country for TPS based on specific statutory conditions; second, nationals from that country must apply for TPS and demonstrate eligibility, including showing they have no disqualifying criminal convictions.

3.      The Secretary is not permitted to unilaterally terminate TPS. Rather, the statute requires a factual inquiry, including consultation with other government agencies, into the conditions that warranted TPS and requires that TPS be continued unless the factual record requires termination.

4.      Plaintiffs submitted FOIA requests to Defendants Department of Homeland Security ("DHS"), Department of State ("DOS"), and U.S. Citizenship and Immigration Services ("USCIS") on January 14, 2025 seeking memoranda relating to the multi-step review process historically employed by the government to evaluate country conditions and make TPS determinations.

5.      There is a compelling need for prompt disclosure of these records because of the Secretary's recent decisions to terminate TPS for Haiti and Venezuela, which threaten the legal immigration status of more than one million Haitian and Venezuelan foreign nationals, and the impending risk of additional unlawful termination attempts for other countries currently designated for TPS. This program of unauthorized termination of TPS has already been the subject of litigation challenges. *See Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2019); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083 (N.D. Cal. 2018).

6.      Specifically, the documents sought through Plaintiffs' request will provide critical insight into the historical practices of the executive branch in conducting the review of country conditions that informs their decisions to extend, redesignate, or terminate TPS, the legal standard historically employed by the agencies, and policy considerations historically undertaken by the agencies.

7.      Moreover, understanding these historical practices will shed light on the legality of recent vacaturs and terminations of TPS for Haiti and Venezuela, the reasons for those decisions,

adequacy of the review of relevant conditions, and the need for immediate action to reverse or otherwise ameliorate those decisions. The records will also help clarify the extent to which recent determinations to terminate TPS for Haiti and Venezuela involved a changed legal standard, changed policy considerations, and the improper consideration of factors unrelated to extraordinary and temporary conditions in TPS-designated countries that prevent foreign nationals from returning to those countries in safety.

8. To date, Defendants have produced no records in response to Plaintiffs' FOIA requests.

9. Defendants' failure to disclose and produce the requested records violates FOIA. Plaintiffs now bring this action to obtain the records to which they are statutorily entitled.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter under FOIA, 5 U.S.C. § 552(a)(4)(B), and as a federal question under 28 U.S.C. § 1331.

11. Venue is proper under 5 U.S.C. § 552(a)(4)(B) because one of the Plaintiffs, Professor Ellie Happel, has her principal place of business within this District.

## PARTIES

12. Plaintiff Ellie Happel is an adjunct clinical law professor at the New York University ("NYU") School of Law. She directs a human rights clinic and conducts academic and applied research related to human rights issues. A significant strand of her teaching and ongoing clinical work relates to Haiti and Haitian immigrants in the United States. Professor Happel's principal place of business is located at NYU School of Law, 245 Sullivan Street, New York, NY 10012.

13. Plaintiff Just Futures Law ("JFL") is a nonprofit organization that works in partnership with organizers and base-building groups to develop legal and advocacy strategies aimed at disrupting criminalization and deportation. JFL disseminates information about the immigration system to the public in accessible ways and is a leader in providing training and support for legal practitioners, community-based organizations, and community members. JFL provides expert information and community-based education on ICE tactics and possible legal and policy remedies.

14. Defendant DHS is a department within the executive branch of the United States government. It is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is responsible for enforcing federal immigration laws. Upon information and belief, DHS has possession, custody, and control over the records Plaintiffs seek.

15. Defendant DOS is a department within the executive branch of the United States government. It is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). Upon information and belief, DOS has possession, custody, and control over the records Plaintiffs seek.

16. Defendant USCIS is a component agency of DHS. It also is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). USCIS oversees lawful immigration to the United States. Upon information and belief, USCIS has possession, custody, and control over the records Plaintiffs seek.

## STATEMENT OF FACTS

17. Under 8 U.S.C. § 1254a(b)(1), the Secretary of Homeland Security ("Secretary") is authorized to designate a foreign state for TPS upon a finding that such state is experiencing ongoing armed conflict, an environmental disaster, or "extraordinary and temporary conditions."

18. During the period for which the Secretary has designated a country for TPS, TPS beneficiaries are eligible to remain in the United States and may obtain work authorization. 8 U.S.C. § 1254a(a)(1).

19. At least sixty days before a country's TPS designation is set to end, the Secretary, in consultation with the other agencies, must review country conditions in the foreign state. 8 U.S.C. § 1254a(b)(3)(A). Unless the Secretary determines that a foreign state no longer meets the conditions for which a designation is in effect, the period of designation is automatically extended for an additional period of at least six months. 8 U.S.C. § 1254a(b)(3)(C).

20. The Secretary may also redesignate a country for TPS if new or worsening conditions justify allowing more recent arrivals to apply and demonstrate eligibility for TPS. 8 U.S.C. § 1254a(b)(3)(A).

21. During the review process, governmental agency partners, including Defendants DOS and USCIS, share information with the Secretary in the form of, among other things, memoranda of the type sought by Plaintiffs via their FOIA requests, which detail current conditions in the foreign state being reviewed and contain recommendations for the Secretary to consider.

22. As of the filing of this Complaint, the countries designated for TPS are Afghanistan, Burma (Myanmar), Cameroon, El Salvador, Ethiopia, Haiti, Honduras, Lebanon, Nepal, Nicaragua, Somalia, South Sudan, Sudan, Syria, Ukraine, Venezuela, and Yemen.

23. All seventeen countries currently designated for TPS either have had their TPS designation extended, have been redesignated, or both.

24. For each instance of extension or redesignation, the Secretary was required to consult governmental agency partners, including Defendants DOS and USCIS, regarding whether country conditions continued to warrant TPS designation. 8 U.S.C. § 1254a(b)(1).

## Background of TPS Designations and Terminations for Haiti

25. On January 21, 2010, after consulting with DOS and other government agencies, Secretary Janet Napolitano designated Haiti for TPS for a period of 18 months, less than 10 days after a 7.0-magnitude earthquake destroyed most of Haiti's capital city, Port-au-Prince, killing more than 200,000 people and displacing over 2.3 million. 75 FR 3476 (Jan. 21, 2010).

26. On May 19, 2011, citing the ongoing effects of the earthquake and the deadly cholera outbreak that occurred in October 2010, Secretary Napolitano both extended the existing TPS designation for Haiti and redesignated Haiti for TPS for an additional 18 months. 76 FR 29000 (May 19, 2011).

27. TPS was extended for Haitian nationals for 18-month intervals again in October 2012, March 2014, and August 2015. For each extension, DHS attributed the extension of TPS for Haitian nationals to conditions arising from the 2010 earthquake, the subsequent cholera outbreak and ensuing epidemic, and the two crises' exacerbation of pre-existing vulnerabilities, including food insecurity and a housing crisis.

28. In December 2016, in advance of the expiration of the August 2015 extension of TPS for Haitian nationals, Secretary of State John F. Kerry recommended that Secretary Jeh Johnson extend TPS for Haiti upon its expiration on July 22, 2017.

29. On January 20, 2017, President Donald Trump took office for his first term.

30. On April 10, 2017, Acting USCIS Director James W. McCament recommended termination of TPS.

31. On May 24, 2017, Secretary John F. Kelly extended TPS for Haiti for a period of six months. 82 FR 23830 (May 24, 2017).

32. Despite documenting a number of country conditions that continued to prevent Haitian nationals from returning to Haiti in safety, Secretary Kelly, through his designation notice, advised Haitian nationals to prepare to return to Haiti, made public statements that the 6-month extension was meant to be an "alert," and falsely attributed past extensions to "automatic renewals." *Id.* at 23832.

33. On November 20, 2017, Acting Secretary Elaine Duke announced her decision to terminate the TPS designation for Haiti with a delayed effective date of 18 months, stating that the "extraordinary but temporary conditions relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met."[1]

34. This determination was made although the conditions and challenges arising from the earthquake had not substantially changed since Secretary Kelly's extension determination on May 24, 2017.

35. Unlike her predecessors, Acting Secretary Duke did not meaningfully address the ongoing cholera epidemic, the effects of Hurricane Matthew, the housing crisis, the ongoing presence of internally displaced people, and other conditions cited in earlier extensions and the redesignation.

36. However, the Trump administration's attempt to unlawfully end Haiti's TPS designation was enjoined by the Eastern District of New York. *See generally Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2019).

---

[1] DHS Press Release, "Acting Secretary Elaine Duke Announcement on Temporary Protected Status for Haiti (Nov. 20, 2017) ("DHS Press Release") available at https://www.dhs.gov/news/2017/11/20/acting-secretary-elaine-duke-announcement-temporary-protected-status-haiti.

37. Subsequently, during the Biden Administration, Secretary Alejandro Mayorkas designated Haiti for TPS on August 3, 2021, after consultation with DOS and other appropriate government agencies. 86 FR 41863 (Aug. 3, 2021). Secretary Mayorkas concluded that "Haiti is grappling with a deteriorating political crisis, violence, and a staggering increase in human rights abuses." *Id*. at 41864.

38. On January 26, 2023, after consultation with DOS and other appropriate government agencies, Secretary Mayorkas both extended Haiti's then current TPS designation and redesignated Haiti for TPS. 88 FR 5022 (Jan. 26, 2023).

39. On July 1, 2024, after consultation with DOS and other appropriate government agencies, Secretary Mayorkas extended and redesignated Haiti's TPS designation. 89 FR 54484 (July 1, 2024) ("2024 Haiti TPS Extension").

40. During his 2024 presidential campaign, President Trump made clear his intention to end TPS for Haiti.[2]

41. President Trump took office for a second term on January 20, 2025.

42. Shortly thereafter, Secretary Kristi Noem issued a partial vacatur of Haiti's TPS on February 20, 2025, reducing Haiti's designation period for TPS from 18 months to 12 months. 90 FR 10511 (Feb. 18, 2025).

43. For the second time in the 35-year history of the TPS statute, after doing the same to Venezuela, as described below, Secretary Noem vacated the 2024 Haiti TPS Extension.

---

[2] On October 2, 2024, a reporter asked President Trump specifically whether he would end TPS for Haiti. President Trump responded: "Absolutely I'd revoke it, and I'd bring them back to their country." Maggie Astor, *Trump Says He Would Try Again to Revoke Haitian Immigrants' Protections*, N.Y. TIMES (Oct. 3, 2024), https://www.nytimes.com/2024/10/03/us/politics/trump-haitian-immigrants-legal-status.html

44. Secretary Noem stated that she vacated the 2024 Haiti TPS Extension for three stated reasons. First, the corresponding notice announcing the 2024 Haiti TPS Extension contained "no explanation whatsoever of why the 18-month period was selected." Second, the "notice is bereft of any justification of why permitting the ever-increasing population of Haitian TPS recipients, particularly those who entered the country unlawfully, to remain temporarily in the United States is not contrary to the U.S. national interest." Third, "certain sources upon which DHS relied indicated that significant developments were taking place in 2024 that might result in an improvement in conditions[,]" such as the United Nations' recently authorized Multinational Security Support ("MSS") mission, but "that important development was not expressly factored into the determination of the length of the extension and designation period." 90 FR 10511, 10513-14.

45. Unlike her predecessor, Secretary Noem provided no meaningful factual analysis whatsoever of the conditions in Haiti, except to note the ongoing 2024 United Nations mission that could possibly lead to an improvement in the conditions.

### Background of TPS Designations and Terminations for Venezuela

46. On March 9, 2021, after consultation with DOS and other appropriate government agencies, Secretary Alejandro Mayorkas designated Venezuela for TPS, finding that "Venezuela is currently facing a severe humanitarian emergency" including, among other things, economic collapse, failing food, housing, and healthcare infrastructure, political instability and corruption, and human rights abuses. 86 FR 13574, 13576 ("2021 Venezuela TPS Designation").

47. On September 8, 2022, Secretary Mayorkas extended the designation of Venezuela for TPS for an additional 18-month period, citing the severe, enduring political and economic

9

crises, limited access to food, basic services, and healthcare, and ongoing human rights abuses. 87 FR 55024.

48. On October 3, 2023, Secretary Mayorkas both extended and redesignated TPS for Venezuela, each for an additional 18-month period. The extension was effective through September 10, 2025, and the redesignation was effective through April 2, 2025. 88 FR 68130 ("2023 Venezuela TPS Designation").

49. On January 10, 2025, Secretary Mayorkas extended the redesignation for an additional 18-month period, effective through October 2, 2026, finding that "Venezuela is experiencing a complex, serious and multidimensional humanitarian crisis [that] has reportedly disrupted every aspect of life in Venezuela." 90 FR 5961, 5963 ("2025 Venezuela TPS Extension").

50. To "decrease confusion among stakeholders, ensure optimal operational processes, and maintain the same eligibility requirements," Secretary Mayorkas consolidated the filing process for the 2021 and 2023 TPS designations. This allowed all TPS beneficiaries to apply or re-register under the same designation, through the same extension date of October 2, 2026, regardless of whether they initially registered under 2021 Venezuela TPS Designation or the 2023 Venezuela TPS Designation. *Id*.

51. President Trump took office for a second term on January 20, 2025, and immediately issued an Executive Order mandating that the Secretary of State, the Attorney General, and the Secretary of Homeland Security take action to limit the scope of TPS and promptly rescind the policy decisions of the previous administration. Exec. Order No. 14159, 90 FR 8443 (Jan. 20, 2025).

52. Three days after she was sworn in, on January 28, 2025, Secretary Noem vacated the 2024 Haiti TPS Extension—the first vacatur of a TPS extension in the 35-year history of the TPS statute.[3]

53. Unlike her predecessor, Secretary Noem provided no factual analysis whatsoever of conditions in Venezuela in her notice of vacatur. 90 FR 8805 (Feb. 3, 2025).

54. Secretary Noem announced the vacatur decision in an interview, stating that "the people of this country want these dirtbags out."[4]

55. On February 1, 2025, Secretary Noem terminated the 2023 Venezuela TPS Designation.

56. This determination was made although the conditions and challenges arising from the 2021 and 2023 Venezuela TPS Designations have not substantially changed since Secretary Mayorkas' extension and redesignation determinations.

57. For the first time in the 35-year history of the TPS statute, Secretary Noem terminated TPS because the designation "is contrary to the national interest[.]" 90 FR 9040, 9042.

58. In her termination notice, Secretary Noem stated that in addition to considering the national interest factors that were also "presented to former Secretary Mayorkas for consideration," she consulted the appropriate government agencies and reviewed country conditions. *Id.* at 9041, 43.

---

[3] USCIS, Temporary Protected Status Designated Country: Venezuela, available at https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-venezuela.

[4] DHS Sec. Noem Announces End to Temporary Protected Status for Venezuelan Migrants, FOX AND FRIENDS (Jan. 29, 2025) at approx. 1:19, available at https:// www.foxnews.com/video/ 6367942790112? msockid=30416397acd261bf24f1707bad68603.

11

59. However, unlike her predecessor, Secretary Noem provided no factual analysis whatsoever of the current country conditions in Venezuela, nor did she make any mention of the extraordinary and temporary conditions that led to any of the prior determinations to extend or redesignate.

60. In her termination notice, Secretary Noem cited President Trump's Executive Order, "Protecting the American People Against Invasion," his "recent, immigration and border-related executive orders and proclamations," his declaration of a "national emergency at the southern border," and his directive to put "America and American citizens first." *Id*. at 9042–43.

61. Secretary Noem stated that she "has taken into account the national-interest-related factors that were presented to former Secretary Mayorkas for his consideration … and after consulting with the Department of State, the Secretary has reached a different conclusion[.]" *Id*. at 9043.

**Plaintiffs' FOIA Request Directed to Defendant DOS**

62. On January 14, 2025, Plaintiffs submitted one of their FOIA requests to DOS. *See* Exhibit A, DOS FOIA Request.

63. The DOS FOIA Request sought "the most recent and second most recent versions of the Department of State recommendations regarding TPS for all countries currently designated for TPS (El Salvador, Venezuela, Sudan, Ukraine, South Sudan, Afghanistan, Cameroon, Nepal, Honduras, Nicaragua, Syria, Burma (Myanmar), Ethiopia, Haiti, Yemen, Somalia)." Ex. A, at 2.

64. Plaintiffs sought "expedited processing" under 5 U.S.C. § 552(a)(6)(E)(i) and a full fee waiver pursuant to both 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k)(1) (public interest waivers).

**Defendant DOS' Failure to Respond**

65. By letter dated February 10, 2025, DOS acknowledged receipt of the DOS FOIA Request on January 14, 2025, and denied expedited processing. *See* Exhibit B, DOS Acknowledgment Letter.

66. In its letter, Defendant DOS stated that it would "not be able to respond within the 20 days provided by the statute due to 'unusual circumstances' [including] the need to search for and collect requested records from other Department offices or Foreign Service posts." *See* Ex. B, at 1 (citing 5 U.S.C. § 552(a)(6)(B)(i)-(iii)).

67. Even assuming that unusual circumstances apply in this case, the FOIA allows for an extension of no more than ten business days. 5 U.S.C. § 552(a)(6)(B)(i). ("No such notice [setting forth the applicable unusual circumstances] shall specify a date that would result in an extension for more than ten working days.")

68. Thus, Defendant DOS was required to respond to the DOS FOIA Request no later than February 28, 2025.

69. As of the filing of this Complaint, Defendant DOS has not yet responded to the DOS FOIA Request.

**Plaintiffs' FOIA Request Directed to Defendants DHS and USCIS**

70. On January 14, 2025, Plaintiffs submitted their FOIA request to the DHS and USCIS. *See* Exhibit C, DHS/USCIS Request.

71. The DHS/USCIS FOIA Request sought the following records:

   a. The most recent and second most recent versions of Decision Memoranda sent by the USCIS Director to the Secretary for all countries currently designated for TPS (El Salvador, Venezuela, Sudan, Ukraine,

        South Sudan, Afghanistan, Cameroon, Nepal, Honduras, Nicaragua, Syria, Burma (Myanmar), Ethiopia, Haiti, Yemen, Somalia).

    b. The most recent and second most recent versions of Country Conditions Memoranda on Temporary Protected Status Considerations prepared by the USCIS Refugee, Asylum, International Operations Research Unit, including any addenda, regarding TPS for all countries currently designated for TPS and listed above.

Ex. C, at 2.

72. Plaintiffs sought "expedited processing" under 5 U.S.C. § 552(a)(6)(E)(i) and a full fee waiver pursuant to both 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k)(1) (public interest waivers).

### Defendant DHS' Failure to Respond

73. By letter dated January 16, 2025, Defendant DHS acknowledged receipt of the DHS/USCIS FOIA Request on January 14, 2025 and transferred the entire request to USCIS "[d]ue to the subject matter of [the] request." *See* Exhibit D, DHS Acknowledgment Letter.

74. On January 24, 2025, Plaintiffs appealed DHS' decision to transfer the DHS/USCIS FOIA Request to USCIS (the "Appeal"). See Exhibit E, DHS Appeal.

75. Defendant DHS received the Appeal on February 5, 2025.

76. Defendant DHS was required under 6 C.F.R. § 5.8(d) to respond to the Appeal within 20 business days.

77. Thus, Defendant DHS was required to respond to the Appeal no later than March 7, 2025.

78. As of the filing of this Complaint, Defendant DHS has not yet responded to the DHS/USCIS FOIA Request.

### Defendant USCIS' Failure to Respond

79. By letter dated January 15, 2025, Defendant USCIS acknowledged receipt of the DHS/USCIS FOIA Request on January 14, 2025, and denied expedited processing. *See* Exhibit F, USCIS Acknowledgment Letter.

80. Defendant USCIS invoked a 10-business day extension under 5 U.S.C. 552(a)(6)(B)(i) to respond to the DHS/USCIS FOIA Request due to "unusual circumstances" including the "need to locate, compile, and review responsive records from multiple offices, both at headquarters and in the field[, and] … consult with another agency or other component of the Department of Homeland Security that have a substantial interest in the responsive information." Ex. F, at 2-3.

81. Even assuming that unusual circumstances apply in this case, the FOIA allows for an extension of no more than 10 business days.  5 U.S.C. § 552(a)(6)(B)(i).

82. Thus, Defendant USCIS was required to respond to the DHS/USCIS FOIA Request no later than February 28, 2025.

83. As of the filing of this Complaint, Defendant USCIS has not yet responded to the DHS/USCIS FOIA Request.

### Exhaustion of Administrative Remedies

84. As of the date of this Complaint, Defendants have failed to (a) notify Plaintiffs of a final determination regarding Plaintiffs' FOIA requests, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b)

15

produce the requested records or demonstrate that the requested records are lawfully exempt from production.

85. An agency's failure to comply with any timing requirement is deemed a constructive denial and satisfies the requester's requirement to exhaust administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

86. A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued withholding of public records. 5 U.S.C. § 552(a)(4)(B).

87. Through Defendants' failure to respond to Plaintiffs' FOIA requests within the time period required by law, Plaintiffs have constructively exhausted their administrative remedies and seek immediate judicial review.

## CLAIMS FOR RELIEF

### COUNT I

**FOIA Violation: Failure to Conduct Adequate Searches for Responsive Records**

88. Plaintiffs re-allege and incorporate by reference paragraphs 1-87.

89. Plaintiffs properly requested records within the possession, custody, and control of Defendants.

90. Defendants are agencies subject to FOIA, and they must therefore make reasonable efforts to search for requested records.

91. Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to Plaintiffs' FOIA requests.

92. Defendants' failure to conduct an adequate search for responsive records violates FOIA and applicable regulations.

93. Plaintiffs are therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to Plaintiffs' FOIA requests.

## COUNT II

**FOIA Violation: Failure to Disclose and Release Non-Exempt Responsive Records**

94. Plaintiffs re-allege and incorporate by reference paragraphs 1-87.

95. Plaintiffs properly requested records within the possession, custody, and control of Defendants.

96. Defendants are agencies subject to FOIA, and they must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

97. Defendants are wrongfully withholding non-exempt agency records requested by Plaintiffs by failing to produce non-exempt records responsive to its FOIA requests.

98. Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

99. Plaintiffs are therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

a. Declare that Defendants' failure to disclose the records responsive to Plaintiffs' requests is unlawful;

      b.      Order Defendants' to promptly conduct a thorough search for all responsive records;

      c.      Order Defendants to expeditiously process and release all responsive records, and enjoin Defendants from improperly withholding records;

      d.      Award Plaintiffs reasonable attorneys' fees and other litigation costs incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

      e.      Grant such other relief as the Court may deem just and proper.

Dated: March 12, 2025

Respectfully submitted,

/s/ Daniel P. Mach
Daniel P. Mach
Madisen Hursey (application for pro hac vice forthcoming)
Bryan Cave Leighton Paisner LLP
1290 Avenue of the Americas
New York, New York 10104
daniel.mach@bclplaw.com
madisen.hursey@bclplaw.com

## **CERTIFICATE OF SERVICE**

      I, Daniel P. Mach, declare under penalty of perjury that I served a copy of the attached Complaint upon all other parties in this case by filing with the Clerk of Court through the CM/ECF system on this 12th day of March, 2025.

Dated: March 12, 2025                                            /s/ Daniel P. Mach
                                                                                   Daniel P. Mach
                                                                                   One of Plaintiffs' attorneys

                                                                                   Bryan Cave Leighton Paisner LLP
                                                                                   1290 Avenue of the Americas
                                                                                   New York, New York 10104
                                                                                   daniel.mach@bclplaw.com